SAN ANGELO COTTON OIL CO. v. HOUSTON COUNTY OIL MILL & MFG. CO. et al. (No. 978.)

(Court of Civil Appeals of Texas. Amarillo. April 26, 1916.)

1. VENUE &=22(1)—DOMICILE OF CODEFENDANTS.

Rev. St. 1879, art. 1198, subd. 4 (Vernon's Sayles' Ann. St. 1914, art. 1830, subd. 4), allowing suit in any county where any defendant resides, means that, if one who is a proper or necessary party defendant resides in the county in which the action is brought, other defendants residing in other counties may be joined with him.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 35; Dec. Dig. &=22(1).]

2. VENUE &=22(3)—CODEFENDANTS—LIABILITY OF AGENT FOR UNAUTHORIZED CONTRACTS.

A broker assuming to negotiate a contract for principal is liable to the contracting party for the damages resulting from breach of his warranty of authority; so that suit may be brought against the principal and broker in the county where the latter resides.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 37: Dec. Dig. &=22(3).]

3. PLEADING &=20 — ALTERNATIVE ALLEGATIONS—DUPLICITY.

A plaintiff who is doubtful about the particular facts he can establish may plead in the alternative without rendering his pleading demurrable for inconsistency or multifariousness.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 43; Dec. Dig. &=20.]

4. PRINCIPAL AND AGENT &=184(1)—ACTION AGAINST BOTH.

In a suit on a contract made by an agent, where his authority to make it is questioned, the agent is a proper party defendant if sued in the alternative as liable in the event of determination that he had no such authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 701, 702; Dec. Dig. &= 184(1).]

5. SALES &=418(2)—CONTRACT—ACTION BY BUYER—DAMAGES.

Subject to certain exceptions, when the price has been paid, if the thing purchased is fluctuating in value, the buyer may sue for the

highest market value between the date of purchase and the trial of the case.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1175–1179; Dec. Dig. ☞418(2).]

6. **SALES** ☞418(2)—CONTRACT—ACTION BY BUYER—DAMAGES.

As a general rule, when the seller refuses to deliver and when the price has not been paid, the damage is the difference between the contract price and the market value at the time and place of delivery.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1175–1179; Dec. Dig. ☞418(2).]

7. SALES ☞418(7) — CONTRACT — ACTION BY BUYER—DAMAGES.

Where the market was rising, and the seller refused to deliver, and the buyer immediately upon breach purchased the goods in the open market, the buyer may recover the excess paid over the contract price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1188; Dec. Dig. ☞418(7).]

Appeal from Dallas County Court of Law; T. A. Works, Judge.

Action by the Houston County Oil Mill & Manufacturing Company against the San Angelo Cotton Oil Company and another. From a judgment for plaintiff, the defendant named appeals. Affirmed.

Wright & Harris, of San Angelo, for appellant. Hill, Lee & Hill, of San Angelo, and Seay & Seay and Burgess, Burgess, Germany & Chrestman, all of Dallas, for appellees.

HENDRICKS, J. The appellee the Houston County Oil Mill & Manufacturing Company sued the San Angelo Cotton Oil Company and the Zimmerman Brokerage Company, claiming that on or about October 31, 1913, it purchased from the Cotton Oil Company six tanks of prime crude oil for delivery the following November, December, and January, in installments of two tanks for each month, at 35½ cents per gallon; that on account of the repudiation by the cotton oil company of the authority of the brokerage company as agent in selling the oil, and the refusal of said cotton oil company to comply with the contract of sale, appellee was compelled to go into the open market and purchase said oil at the lowest possible price, suing the appellant for the difference between the contract price and the enhanced price it was required to pay for the oil in the open market. The appellee joined the Zimmerman Brokerage Company with the cotton oil company in the suit, filing it in Dallas county, which was the domicile of said brokerage company, upon allegations that in the event it should be determined that the brokerage company acted without authority, appellee have judgment against said brokerage company for the same amount alleged against the cotton oil company.

The San Angelo Cotton Oil Company, whose domicile is in Tom Green county, interposed its plea of personal privilege, praying for a transfer of said cause to the latter county, which the court overruled. The court's action in that respect is correct. The statute is (subdivision 4, art. 1198, Revised Statutes 1879 [Vernon's Sayles' Ann. St. 1914, art. 1830, subd. 4]):

"When there are two or more defendants residing in different counties, suit may be brought in any county where any one of the defendants reside."

[1] Of course, the ground of the cause of action, in order to require a defendant to answer in a county other than its domicile, must be sufficient against the other defendant for the joinder. Railway Co. v. Mangum, 68 Tex. 346, 4 S. W. 617.

"It means simply that, if one who is a proper or necessary party defendant resides in the county in which the action is brought, then other defendants may be joined with him who reside in other counties."

[2] If both defendants could be properly joined in the particular cause, then within the purview of the statute plaintiff had a cause of action against two defendants residing in different counties, and could sue both in the county of the residence of either.

"A broker who assumes to negotiate a contract in behalf of a principal is liable to the other contracting party for the damages resulting from the breach of the warranty of authority." 19 Cyc. p. 305.

[3] The Supreme Court said:

"We also think that our system of pleading permits a plaintiff who is doubtful about the particular facts he can establish to plead in the alternative, without rendering his pleading demurrable for inconsistency, or multifariousness." Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787.

[4] We can find no case holding that the agent cannot be sued in the alternative as a proper party defendant where the question of the agent's authority to make the contract is involved. See Harris v. Cain, 41 Tex. Civ. App. 139, 91 S. W. 869; Commercial National Bank v. First National Bank, 77 S. W. 239; Heard v. Clegg, 144 S. W. 1145.

In an early stage of the transaction, bearing upon the alleged purchase of the oil by appellee, the cotton oil company explicitly and vigorously repudiated the alleged authority of the brokerage company in selling the oil to the Houston Company, setting out in detail in a letter written to both companies the circumstances as it viewed the transaction. In such a condition, whatever appellee may have thought of the real status of the brokerage company's authority, it could not prophesy whether a court or jury would find that said brokerage company had the authority, and the joinder in the same suit of the brokerage company for the lack of authority, if it existed, as a precautionary measure, is in line with the principle which condemns a multiplicity of suits.

It is vigorously insisted that appellee invoked, and that the court submitted, a wrong measure of damages in permitting a recovery of $620, the excessive price paid by it for the oil, over and above the contract

---

price. Appellant does not dispute the price paid, but merely the measure of damages. The testimony of Mr. Self, the manager of appellee, is sufficient to show that upon the dates he purchased said oil he did so at the best price in the open market. The objection is that it should have been alleged, submitted by the court, and determined by the jury that the difference between the price agreed to be paid by the plaintiff for the oil and the fair market value of same in San Angelo, Tex., at the time and place of delivery was the criterion.

[5] It is the rule when the price has been paid, if the thing purchased is fluctuating in value, the buyer may sue for the highest market value between the date of purchase and the trial of the case, subject to exceptions not necessary to mention. Randon v. Barton, 4 Tex. 293; Masterson v. Goodlett, 46 Tex. 403; Pace v. Ortiz, 72 Tex. 437, 10 S. W. 541; Wright v. Davenport, 44 Tex. 168.

[6] It is also the general rule when the seller refuses to deliver, and when the price has not been paid, that ordinarily the damage is the difference between the contract price and the market value at the time and place of delivery. Ullman v. Babcock, 63 Tex. 69; McKay v. Elder, 92 S. W. 268; Grant v. Duer, 2 Willson Civ. Cas. Ct. App. § 570.

[7] The record in this case shows that the particular contract was made upon a rising market. The appellee notified the appellant that it had sold the oil when the latter evidenced its repudiation of the contract. Thereafter, upon further insistence by the cotton oil company that the brokerage company had no authority to make such contract, appellee almost immediately went into the open market, purchasing four tanks of oil for 36½ cents per gallon, and two tanks at 37 cents per gallon. Mr. Self, appellee's general manager, said:

"From the day of receiving the telegram repudiating the contract until the end of January, 1913, the price of oil advanced most every day, but some days it was stationary with the previous day, but generally the price advanced until it reached 40 cents a gallon and 41 cents a gallon before it turned back again. * * * The price I paid for the oil I had to purchase was the market price of the oil at the time it was purchased."

This testimony does not seem to be denied. Our analysis of this record is such that, if appellee had alleged and proved the measure of damages contended for by the appellant cotton oil company, the recovery in this particular cause would have been greater than the amount found. If appellee had not purchased oil in the open market for the purpose of fulfilling its contract with its subvendee, we have no doubt but that appellant would have interposed a plea and insisted vigorously, with authority to sustain its contention, that the appellee, as a reasonably prudent person, knew that the oil could have been purchased in the open market at a less price, and could have saved some of the damages, measured by the rule now contended for. We are not, of course, holding that the appellant, the cotton oil company, is charged with liability on account of any notice of any contract appellee had with its subvendee, but, in the condition of the record, the rule applied by the court and invoked by appellee is a saving instead of a detriment to the appellant.

This judgment should not be disturbed, and it is in all things affirmed.